**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Kevin Klatte | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:17-cv-00516 |
| | ) | |
| vs. | ) | Judge Michael R. Barrett |
| | ) | |
| Lasership, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## ORDER

This matter is before the Court on Defendant LaserShip, Inc.'s ("LaserShip") Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay the Action and Compel Arbitration and the responsive briefing thereto. (Docs. 10, 13, 15). Plaintiff filed notices of supplemental authority (Docs. 17, 22) and LaserShip responded (Docs. 18, 23). The Court held an evidentiary hearing on the matter. (Doc. 21).


## I. BACKGROUND

Plaintiff brings this purported class action against LaserShip for alleged violations of the Fair Labor and Standards Act ("FLSA"), the Ohio Constitution, the Ohio Minimum Fair Wage Standards Act, and the Ohio Prompt Pay Act. (Doc. 1). He alleges that LaserShip misclassified him and others similarly situated as independent contractors and, in doing so, avoided paying minimum wages and overtime payments. (*Id.*).

LaserShip operates a courier service and Plaintiff worked for LaserShip as a delivery driver from February 2016 to February 2017. (*Id.*). In February 2016, Plaintiff signed an

independent contractor agreement ("the Agreement") with Prestige Delivery Systems, Inc., ("Prestige Delivery"). (Doc. 10, Attachment 1, Exhibit A). The Agreement included arbitration and anti-assignment provisions. (*Id.*).

Plaintiff filed his Complaint in this matter in August 2017. In October 2017, LaserShip requested that Plaintiff voluntarily stipulate to dismiss this matter in favor of arbitration in light of the Agreement. (Doc. 10, Attachment 2). Plaintiff declined.

LaserShip moves to dismiss Plaintiff's Complaint and compel arbitration pursuant to the Agreement and the Federal Arbitration Act ("FAA"). (Doc. 10).

## II. The Agreement

The opening sentence of the Agreement states that:

**THIS INDEPENDENT CONTRACTOR OPERATING AGREEMENT** ("Agree-ment") is entered into between Prestige Delivery Systems, Inc., with its principal office at 9535 Midwest Ave., Suite 104, Garfield Hts., Ohio 44125 ("Carrier") and Kevin Klatte, whose address appears at the end of this Agreement ("Con-tractor").

(Doc. 10, Attachment 1, PageID 54) (emphasis in original). The Agreement included the following provisions:

18. <u>Arbitration</u>. Any dispute, claim, or controversy between Contractor and Carrier arising out of or in connection with this Agreement or any alleged breach of this Agreement shall be resolved by final and binding arbitration administrated by National Arbitration and Mediation ("NAM"). The Arbitration process shall be governed by the rules contained in Appendix E.

. . .

20. <u>Assignment</u>. This Agreement shall not be assigned, in whole or part, by either party without the prior written consent of the other.

(*Id.* at PageID 61). Appendix E of the Agreement contains the "Arbitration Rules" which provide that "[c]laims must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." (*Id.* at PageID 67).

## III. ANALYSIS

### a. Standard of Review

The burden of proving that a claim is non-arbitrable rests on the party refusing arbitration. *See American Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 243, 133 S.Ct. 2304, 2315, 186 L.Ed.2d 41 (citing *Green Tree Fin. Corp.-Ala v. Randolph*, 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)).

The FAA "promotes 'a liberal federal policy favoring arbitration agreements,' and [establishes that] 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Mason v. Synchrony Bank*, Case No. 3:17-cv-314, 2018 WL 527981, at *2 (S.D. Ohio Jan. 22, 2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Nevertheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotations omitted). "Because arbitration agreements are fundamentally contracts, [the Court reviews] the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Tillman v. Macy's, Inc.*, 735 F.3d 453, 456 (6th Cir. 2013).

A court has four tasks when deciding a motion to compel arbitration: (1) it must determine whether the parties agreed to arbitration; (2) it must determine the scope of the

arbitration agreement at issue; (3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and, (4) if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

## b. Whether the Parties Agreed to Arbitration

Plaintiff acknowledges that he signed the Agreement in February 2016, he worked for LaserShip from February 2016 to February 2017, and LaserShip paid him.  (Doc. 13, Attachment 1).   Plaintiff asserts that LaserShip is not a party to the Agreement, as LaserShip did not sign it, LaserShip and Prestige Delivery were not the same company in February 2016, and there was no valid assignment to LaserShip.  (Doc. 13).  LaserShip acknowledges that "LaserShip, Inc." does not appear on the Agreement; however, it asserts that, at the time Plaintiff signed the Agreement, LaserShip and Prestige Delivery were the same company and, thus, it is a party to the Agreement and it would not need to assign the Agreement to itself.  (Doc. 15).

In the Complaint, Plaintiff asserts that "Defendant [LaserShip] acquired Prestige Delivery Systems, Inc., . . . several years ago."  (Doc. 1 ¶¶ 7, 10).  However, in response to LaserShip's Motion to Compel Arbitration, Plaintiff asserts that LaserShip and Prestige Delivery were two distinct legal entities in February 2016.  (Doc. 13 at PageID 97).  At the evidentiary hearing, LaserShip provided the Court with 14 exhibits, including transactional documents, corporate structure charts, and relevant emails.   LaserShip also offered testimony from Justin Levy, a Partner at the law firm of Winston & Strawn, LLP, who served as the lead transactional attorney for LaserShip's acquisition of Prestige Delivery in 2014.

4

After considering LaserShip's exhibits and testimony produced at the evidentiary hearing, and noting Plaintiff's initial assertion that LaserShip acquired Prestige several years ago, the Court finds that LaserShip acquired Prestige Delivery in 2014 and they were the same company after that acquisition. Plaintiff's reliance on the filings found on the Ohio Secretary of State's Business Filing Portal do not persuade the Court otherwise. *See* (Doc. 13, Attachments 3, 4). Accordingly, LaserShip is the "Carrier" and Plaintiff is the "Contractor" under the Agreement.[1] (Doc. 10, Attachment 1, PageID 54) (THIS INDEPENDENT CONTRACTOR OPERATING AGREEMENT ("Agree-ment") is entered into between Prestige Delivery Systems, Inc., . . . ("Carrier") and Kevin Klatte, . . . ("Contractor")) (emphasis omitted). The Court finds that the parties agreed to arbitrate.

### c. Scope of the Agreement

The Agreement provides that "[a]ny dispute, claim, or controversy between Contractor and Carrier arising out of or in connection with this Agreement . . . shall be resolved by final and bringing arbitration." (Doc. 10, Attachment 1, PageID 61). Plaintiff asserts that his claims fall outside the Agreement's scope, as his claims are not founded in or intertwined with the Agreement. (Doc. 13 at PageID 102-06). LaserShip argues that Plaintiff's claims fall squarely within the Agreement's scope, as his claims relate directly to the compensation that he was, or allegedly, was not paid for the services he performed pursuant to the terms of the Agreement. (Doc. 10 at PageID 47); (Doc. 15 at PageID 140-43).

---

[1] In light of this finding, the Court need not address the parties' arguments regarding when a signatory to a contract can be compelled to arbitrate against a non-signatory. (Doc. 10 at PageID 47-48); (Doc. 13 at PageID 101-03); (Doc. 15 at PageID 139-43).

Plaintiff brings his FLSA and Ohio state law claims to recover overtime compensation and minimum wages[2] for himself and expressly defines the purported class to include any other driver who contracted with Prestige Delivery only as an independent contractor but who was paid by LaserShip.  (Doc. 1).  Contrary to Plaintiff's assertions otherwise, the allegations in his Complaint relate directly to the provisions in the Agreement that he signed.  *Compare* (Doc. 1 at ¶¶ 26-58), *with* (Doc. 10, Attachment 1, PageID 54-68).  The Court finds that Plaintiff's FLSA and Ohio state law claims "arise out of" the Agreement and fall within the Agreement's scope.

### d. Whether Plaintiff's Claims are Arbitrable

The Sixth Circuit has held that Congress did not intend for FLSA claims to be non-arbitrable.  *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018) ("And because the FLSA does not 'clearly and manifestly' make arbitration agreements unenforceable, we hold that it does not displace the Arbitration Act's requirement that we enforce the employees' agreements as written."); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 313 (6th Cir. 2000) (finding claim under FLSA arbitrable but concluding agreement to arbitrate lacked consideration); *see also Aracri v. Dillard's, Inc.*, No. 1:10CV253, 2011 WL 1388613, at *4 (S.D. Ohio Mar. 29, 2011) ("statutory claims may be the subject of an arbitration agreement, including claims under the FLSA.").

"Likewise, Plaintiff[']s[] Ohio state law claims are also subject to arbitration." *Townsend v. Stand Up Mgmt., Inc.*, No. 1:18CV2884, 2019 WL 3729266, at *7 (N.D. Ohio Aug. 8, 2019) (citing *Shakoor v. VXI Glob. Sols., Inc.*, 2017-Ohio-8018, ¶ 17).  "Because all of the Plaintiff[']s[] state law claims arise out of [his] employment with [LaserShip] and

---

[2] He also seeks liquidated damages, additional damages, and attorneys' fees.  (Doc. 1).

[LaserShip's] alleged failure to pay overtime as required under statute, all are subject to and non-exempt from arbitration under federal or Ohio law."  *Id.*

Moreover, to the extent that Plaintiff argues that the Agreement includes an illegal class waiver (Doc. 13 at PageID 105), he is incorrect.  *See Epic Systems Corp. v. Lewis*, ___ U.S. ___, 138 S.Ct. 1612 (2018) (holding that arbitration agreements that require employees to waive collective action under the FLSA are enforceable); *see also Gaffers*, 900 F.3d at 293 (discussing *Epic Systems Corp.*).

### e. Dismiss or Stay

Although the FAA directs courts to stay actions pending arbitration, 9 U.S.C. § 3, the Sixth Circuit has held that dismissal is appropriate when all of the issues raised are subject to arbitration, *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.") (*quoting Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)).  The Court finds, based on the facts of this case, that staying the action and retaining jurisdiction would serve no purpose.

### IV. CONCLUSION

In light of the above, it is hereby **ORDERED** that LaserShip's Motion to Dismiss (Doc. 10) is **GRANTED**, LaserShip's Motion in the Alternative to Stay the Action and Compel Arbitration (*Id.*) is **DENIED**, and the matter is **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

__/s Michael R. Barrett_____
Michael R. Barrett, Judge
United States District Court